IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**KENYA DENISE BASS**     **PLAINTIFF**

v.     **CIVIL ACTION NO.: 4:25-cv-7-JMV**

**COMMISSIONER OF SOCIAL SECURITY**     **DEFENDANT**

## ORDER

On September 10, 2021, Plaintiff filed a Title XVI application for supplemental security income disability payments alleging disability beginning May 18, 2021. A prior application had been denied at the hearing level in May 2021. The current application was denied initially on January 26, 2023, and upon reconsideration on February 21, 2024. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and on July 29, 2024, the ALJ held a hearing. On August 5, 2024, the ALJ issued an unfavorable decision.

Subsequently, Plaintiff requested review from the Appeals Council. On November 21, 2024, the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner of Social Security. For the reasons that follow, the undersigned finds that the ALJ's decision shall be AFFIRMED.

**The Case Below:**

Plaintiff was born in 1977 and has a high school education. She has no past relevant work and no transferable skills, and she was found to have the following severe impairments: bipolar disorder with anxious distress. Tr. 20.

At step one, the ALJ found that Plaintiff had not engaged in SGA since her application date of September 10, 2021. At step two, the ALJ determined that Plaintiff's severe medical

1

impairments were a bipolar disorder with anxious distress. The ALJ acknowledged that the Plaintiff had additional impairments, but those were not found to be severe. The ALJ concluded:

> The medical record also includes references to additional impairments and the record shows the claimant has been treated or evaluated for other symptoms and complaints that appear periodically throughout the record. However, these alleged impairments, considered singly or together, have caused only transient and mild symptoms and limitations, are well controlled with treatment, have not met the twelve-month-durational requirement, or are otherwise not adequately supported by the medical evidence in the record.

Tr. 25.

With regard to Plaintiff's headaches, which the ALJ found to be non-severe, he noted:

> At the hearing, the claimant testified that she had headaches every day. While the medical records do show that the claimant has a history of headaches treated with Depakote and Elavil, treatment notes dated May 2, 2024, indicate that the claimant reported that her headaches were better on her medication and that she may only have a headache weekly (B7F/1).

Tr. 26. Ultimately, the ALJ found that Plaintiff's asthma, diabetes mellitus, headaches, fatty liver, obesity, sinusitis, right bundle branch block, status post excision of a left breast mass and abdominal wall nonhealing wound, and macromastia status post bilateral reduction mammoplasty are such slight abnormalities having such minimal effect both singly and in combination they would not be expected to interfere with her ability to work, irrespective of age, education, or work experience and are therefore non-severe (20 CFR 416.922; *Stone v. Heckler*, 752 F. 2d 1099 (5th Cir. 1985)). However, the ALJ "considered all medically determinable impairments when formulating the claimant's residual functional capacity." Tr. 27.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. The ALJ analyzed the paragraph "B" criteria and noted that "because the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." Tr. 30. The ALJ

also found that the "paragraph C" criteria were not present. *Id.* Ultimately, the ALJ found that the Plaintiff had the following RFC:

> A full range of work at all exertional levels but with the following non-exertional limitations: She is limited to the performance of simple, routine and repetitive tasks, she should work in a low stress job, defined as a job where only occasional decision making is required with only occasional changes in the work setting, and she can have occasional interaction with the public, coworkers and supervisors.

Tr. 30.

In a thorough review of the medical evidence, the ALJ noted as follows with regard to Plaintiff's headaches: "At the July 29, 2024, hearing, the claimant . . . complained that she has headaches 'everyday' and that she will then have to go lay down in a dark room for relief." Tr. 31. However, after careful consideration of the evidence, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ noted that in assessing the consistency of Ms. Bass' subjective complaints and the evidence of record, he has also considered factors including her daily activities, medications, and treatment, among other things. Tr. 32. Notably, the ALJ also found that the DDS findings do not suggest limitations more limiting than those set forth in the determined RFC. Tr. 32.

The ALJ noted that "[t]he claimant's primary care provider, Cassandra Shepard, NP, has been treating [sic] the claimant for bipolar disorder with Buspirone and Sertraline." Tr. 32. However, mentally, the claimant was found to have "very little treatment." The ALJ found that "treatment notes from the claimant's visits to East End Family Clinic do not reflect any significant mental health complaints." Tr. 32. "At her visits to Greenwood Leflore Hospital Neurology Clinic in August 2023, October 2023, December 2023, and May 2024, the claimant's review of systems

3

was negative for anxiety or depression, and psych and neurology exam findings noted that the claimant was oriented to time, place, person, and situation with an appropriate mood and affect and normal memory." Tr. 33.

At step four, the ALJ found that Plaintiff had no past relevant work and no transferable skills. At step five, the ALJ obtained VE testimony identifying unskilled occupations that could be performed by an individual with the same age, education, and the specified functional limitations: warehouse worker (DOT 922.687-058), SVP 2, 100,000 jobs in national economy; linen room attendant (DOT 222.387-030), SVP 2, 50,000 jobs in national economy; and cleaner II (DOT 919.687-014), SVP 1, 50,000 jobs in national economy. Tr. 37. Therefore, the ALJ found that Plaintiff was not disabled.

**Issues on Appeal:**

Plaintiff alleges that the ALJ erred in his consideration of the Plaintiff's migraines/headaches and erred in his analysis of the medical opinions of Nurse Practitioner Cassandra Shepard in this case.

**Standard of Review:**

It is long established that this Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court explained:

> The phrase substantial evidence is a term of art used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks

> whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotations and brackets omitted).

In applying the substantial evidence standard, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Law and Analysis**

**Issue 1: Did the ALJ err in his consideration of the Plaintiff's migraines/headaches?**

As relevant to this case, a severe impairment is an impairment that significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a) (defining a non-severe impairment). A severe impairment must last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1505(a); 404.1509; 404.1520(c); *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). Because an individual is diagnosed with a condition does not mean that the condition would cause limitations that would warrant a finding of a severe impairment. 20 C.F.R. §§ 404.1520(c); 404.1521(a); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis [of a condition], of course, says nothing about the severity of the condition.").

At the hearing, Plaintiff argued that having weekly headaches should have altered the disposition in this case because it creates a functional limitation not considered by the ALJ and

5

would have affected the RFC. In her brief on page 5, Plaintiff cites to evidence in support of "functional limitations being incorporated into the RFC because of this impairment." Pl.'s Brief [14] at 5. Therein, Plaintiff lists the following citations to medical records where she complained of headaches: March 13, 2023; April 12, 2023; August 22, 2023; October 23, 2023; December 26, 2023; and May 2, 2024. *Id.*

In contrast, the Commissioner notes that Plaintiff did not reference or allege headaches when asked to identify conditions that limited her ability to work in her September 2021 Disability Report. Tr. 529. Further, Plaintiff did not report or note headaches at either of the 2022 consultative examinations. Tr. 2, 596-605. Plaintiff was prescribed medication (Elavil 25mg and Depakote ER 250mg) for headaches on August 22, 2023, at Greenwood Leflore Hospital by Dr. Ravi Pande. Tr. 2, 652. In December 2023, Plaintiff reported that she still had headaches, "but some better." Tr. 2, 662. Her Depakote and Elavil medications were not changed. Tr. 2, 667-668. Then, a May 2, 2024, record from Dr. Ravi Pande at Greenwood Leflore Hospital indicated that Plaintiff's headaches were "better" on Depakote ER and Elavil. Tr. 676.

Accordingly, the Commissioner argues that, "The records Plaintiff points to do not establish that Plaintiff's headaches resulted in additional functional limitations lasting or expected to last a duration of twelve months. Pl. Br. at 4-5. Nor does the evidence establish a basis for a closed period of disability. Pl. Br. at 4-5." Def. Br. [15] at 4. The Commissioner further argues that even if an impairment is deemed "severe" under the standard of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), this fact does not require a remand when the Secretary has gone beyond the second step, as here, as not all "severe" impairments are disabling. *Harrell v. Bowen*, 862 F.2d 471, citing *Shipley v. Secretary*, 812 F.2d 934, 935 (5th Cir. 1987).

6

Having considered the record, the briefs of the parties, and the oral argument at the hearing of this matter, the undersigned finds that substantial evidence supports the Commissioner's decision on this issue. The records Plaintiff directed the Court to do not establish reversible error or show that Plaintiff's headaches resulted in additional functional limitations lasting or expected to last a duration of twelve months. The ALJ thoroughly considered Plaintiff's disability report, her testimony, and her daily activities, and the ALJ expressly considered Plaintiff's headaches at both step two and in the RFC analysis portion of the decision. Thus, the undersigned agrees with the Commissioner's argument in his briefing and at the hearing that because this case did not go off at Step 2, there is no reversible error here ("Because the ALJ proceeded with the sequential evaluation process and made a determination that Plaintiff was not disabled at step five, the question of whether or not Plaintiff's headaches should have been labelled as a severe impairment is immaterial." Comm.'s Brief [15] at 6; citing 20 C.F.R. §§ 416.923(c) (combined effect) and 416.945(a)(2)). Further, there was substantial evidence to support the ALJ's finding that Plaintiff's headaches were a medically determinable, but nonsevere impairment, as well as the ALJ's RFC finding.

**Issue 2: Did the ALJ err in his consideration of the medical opinions of Nurse Practitioner Cassandra Shepard in this case?**

Plaintiff argues that the ALJ committed error under the Step 3 listing analysis when the ALJ found: "The record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equaled a listed impairment." Pl.'s Brief [14] at 7, citing Tr. 22. Plaintiff avers that this statement by the ALJ is untrue, inasmuch as the findings contained within Ms. Shepard's source statement and opinion on Pages 717-719 of the transcript would all support

7

Plaintiff meeting listing 12.04 for depressive, bipolar and related disorders. Pl.'s Brief [14] at 7.

Plaintiff's position is that:

> the opinion evidence by Ms. Shepard, as it relates to Plaintiff's mental health impairments, clearly supports her meeting the elements of the "B Criteria" and the opinion evidence by Ms. Shepard enumerated in the transcript (TR 717-719) clearly supports Plaintiff meeting listing 12.04. This is in direct contradiction from the ALJ stating, "[N]o acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal a listed impairment." (TR 23).

Pl.'s Brief [14] at 8.

Prior to assessing the medical opinions and prior administrative medical findings, the ALJ stated as follows:

> As for medical opinion(s) and prior administrative medical finding(s), the undersigned considered the opinions contained in the record in accordance with the regulations and agency rulings (20 CFR 416.920c). In evaluating medical opinions, the undersigned considered the factors of supportability and consistency to determine the persuasiveness of an assessment. The undersigned also considered additional factors such as the nature of the relationship between the provider and the claimant, medical specializations, familiarity with the evidence in a claim, and understanding of the disability program's evidentiary requirements. The undersigned has not provided any articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 416.920b(c).

Tr. 34.

With regard to Nurse Practitioner Cassandra Shepard, the ALJ found:

> The undersigned considered the medical source statements/assessments from Nurse Practitioner Cassandra Shepard in which she indicated the claimant had poor mental functioning, the claimant would off task due to her impairments, the claimant would miss multiple days per month due to her impairments and/or treatment, and the claimant's symptoms/pain interfered with her attention and concentration needed to perform even simple work tasks (B9F; B12F/2, 42-43). These opinions are not persuasive. First, the treating nurse practitioner is not a physician or a psychiatrist and the undersigned is unsure of her qualifications to be making such assessments. Second, her opinions are not consistent with the totality of the relevant objective medical evidence in the case record. Third, her opinions are not consistent with the opinions of the two DDS reviewing physicians and the two DDS reviewing psychologists, whose opinions are consistent with and supported by the totality of the relevant medical evidence in the case record. Fourth, her opinion is not

8

> consistent with the actual treatment records from the East-End Family Clinic. For example, physical and mental exam findings (including normal strength throughout, normal sensory exam, normal gait, normal mental status findings) from the claimant's visits to East-End Family Clinic in March 2023, April 2023, May 2023, June 2023, July 2023, September 2023, December 2023, January 2024, February 2024, March 2024, April 2024, and May 2024 were normal (B11F/5, 10, 16-17, 22, 28; B12F/6-7, 12, 17-18, 22-23, 28, 34, 39). Additionally, the recent treatment notes indicate the claimant's diabetes is "without complications."

Tr. 35.

With regard to this issue, the Commissioner argues that "Shepard's own records do not support the form she completed, as indicated in the pages of the record cited to in the ALJ's persuasiveness analysis. Tr. 35; Tr.2, 807 [12F/6], 823 [12F/22], 717-719 [Ex. 9F]." Comm.'s Brief [15] at 8. At the hearing of this matter, the Commissioner argued, essentially, that there was nothing else in the record that was consistent with the limitations NP Shepard found.

The Court acknowledges Plaintiff's argument that the ALJ was incorrect when noting that "no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equaled a listed impairment." However, even if the ALJ would have instead remarked that "NP Shepard concluded that the claimant's impairments medically equaled a listed impairment" it would not have changed the result because the ALJ ultimately found NP Shepard's findings to be unreliable. As quoted above, the ALJ found the medical source statement check box form to be inconsistent with her actual treatment records from March 2023, April 2023, May 2023, June 2023, September 2023, December 2023, January 2024, February 2024, March 2024, April 2024, and May 2024. *See* Tr. 35.

The task of evaluating the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The Fifth Circuit has noted that "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Therefore, the ALJ is only required to provide enough discussion of the evidence to allow

9

for "meaningful judicial review." *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The undersigned has also denied a request for remand where the Plaintiff alleged that the ALJ did not provide an explicit discussion of the facts of supportability and consistency, but it was evident from the totality of the ALJ's decision that he properly considered these factors. *Cox v. Comm'r of Soc. Sec.*, 2022 WL 834294, at *3-4 (N.D. Miss. 2022). Such is the case here.

Ultimately, as to the second issue, the Court finds there has been sufficient consideration of the medical opinions of Nurse Practitioner Cassandra Shepard, and this Court is not permitted to reweigh the evidence.

**Conclusion:**

In conclusion, I find that the ALJ's opinion is supported by substantial evidence. Accordingly, the ALJ's decision shall be and is hereby AFFIRMED.

**SO ORDERED** this, the 19th day of August, 2025.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**